**United States District Court**
**Eastern District of Michigan**
**Southern Division**

United States of America,

                                   Case No. 2:25-cr-20612-7

vs.

                                   Hon. Mark A. Goldsmith

D-7 David Roshinsky Williams,        **Filed Under Seal**

        Defendant.

_____/

### Government's Supplemental Brief in Response to Roshinsky Williams's Motion to Amend Conditions of Pretrial Release (ECF No. 138)

David Roshinsky Williams's mere promise to comply with bond conditions does not "reasonably assure" he will refrain from the large-scale theft in which he has participated for many years. Roshinsky Williams has spent years brokering stolen high-end cars to co-conspirators who smuggled them overseas. He also coordinated the rental of vehicles in the southern United States and escorted them back to Michigan for delivery to the smugglers.

And notably, Roshinsky Williams continued this activity ███

████████████████████████████████████████████

████████████████████████████████████████████

1

███████████████████████████████████████████████ It was

those recordings that revealed Roshinsky Williams continued to assist

the smuggling operation. Because an unsecured bond does not deter

Roshinsky from endangering the community, the Court should deny

Roshinsky Williams's motion to remove his location-monitoring tether.

## I. Discussion

Conditions of release are necessary under the Bail Reform Act if

the judicial officer determines that release "will endanger the safety of

any other person or the community[.]" 18 U.S.C. § 3142(c)(1). Or, in

other words: when "trust of the defendant is insufficient to assure

appearance and maintain safety." *United States v. Madoff*, 586 F. Supp.

2d 240, 255 (S.D.N.Y. 2009). Here, trust is wanting.

The indicted conspiracy involves over $40 million in stolen

vehicles—a figure that includes only the *recovered* vehicles. Financial

harm, certainly financial harm on this scale, endangers the community.

*See United States v. Jackson*, No. 2:21-cr-20610, ECF No. 121,

PageID.525 (E.D. Mich. Dec. 16, 2021) (Goldsmith, J.) ("[T]he danger

that Jackson may commit further financial crimes—even though non-

violent in nature—also militates against his release."). That Roshinsky

continued stealing █████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████

Notably, *Roshinky offers no less-restrictive bond condition* that "will reasonably assure * * * the safety of any other person and the community[.]" 18 U.S.C. § 3142(c)(1)(B). Here, where Roshinsky Williams was physically escorting stolen cars to the smugglers' lots and working in the South to develop alternative sources of stolen cars (including escorting stolen rental cars back North to the smugglers), his movements are much more consequential than that of the average thief and more deserving of monitoring.

Roshinsky Williams claims that wearing a tether aggravates a medical condition from a self-inflicted gunshot would. But at no point does he explain to the Court *why* switching the tether to the other leg fails to address this problem. Roshinsky Williams's injury (causing him to wear a boot on his leg) did not stop him from escorting a stolen

vehicle to the Greenfield Lot:



Roshinsky Williams has suggested that his seven months on bond without an arrest while wearing a tether demonstrate that a tether is unnecessary. But that is a logical fallacy: The tether's effectiveness does not render it unnecessary.

And the fact that he now has legal representation should be of no comfort to the Court, because counsel is not analogous to a supervising officer who must report bond violations (or even a pretrial custodian). Indeed, Michigan *prohibits* counsel from using confidential information (such as a bond violation) to a client's disadvantage, unless the information relates to an intent to commit a future crime (and even

4

then, counsel has discretion to disclose or not disclose the information). *See* Mich. R. Prof. Cond. 1.6(b)–(c).

Had Roshinsky Williams worn an electronic tether in early 2025, such tether would have revealed his frequent unexplained trips to the southern United States and his repeat visits to the smugglers' lots. Given the millions in theft that Roshinsky Williams facilitated, preventing recurrence of his crimes mitigates a significant danger to the community. *See United States v. Lopez*, 800 F. App'x 473, 476 (9th Cir. 2020) ("[H]ad Lopez been subject to location monitoring, his probation officer might have learned that Lopez regularly spent time at a home that was not his own (his girlfriend's house), followed up to see whether there were any children in that home (there were), and determined whether Lopez had complied with his disclosure responsibility (he had not)."). Because there is no less restrictive means to reasonably assure the community's safety—see 18 U.S.C. § 3142(c)1) (B)—the tether should remain.

## II. Conclusion

Wherefore, the government respectfully requests the Court deny Roshinsky Williams's motion.

5

Respectfully submitted,

JEROME F. GORGON JR.
UNITED STATES ATTORNEY

/s/ Louis F. Meizlish
Assistant United States Attorney
211 W. Fort St., Suite 2001
Detroit, Mich., 48226
313-226-9745
louis.meizlish@usdoj.gov

Dated:      April 29, 2026

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the attorneys of record.

/s/ Louis F. Meizlish
Assistant United States Attorney
211 W. Fort St., Suite 2001
Detroit. Mich., 48226
313-226-9745
louis.meizlish@usdoj.gov

7